**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **EC NEW VISION OHIO, LLC**, | : | **Civil Action No.: 2:23-CV-00691** |
| 500 Stonehenge Parkway | : | |
| Dublin, Ohio 43017, | : | |
| | : | **Judge_____** |
| **MARY JO VILARDO, TRUSTEE** | : | |
| **PHILLIP J. VILARDO SR.** | : | |
| **IRREVOCABLE TRUST**, | : | **Magistrate Judge_____** |
| 1585 Bethel Road | : | |
| Columbus, Ohio 43220, | : | |
| | : | **Demand for Jury Trial** |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | |
| | : | |
| **GENOA TOWNSHIP, OHIO**, | : | |
| 5111 South Old 3C Highway | : | |
| Westerville, Ohio 43082, | : | |
| | : | |
| *Defendant.* | : | |

**COMPLAINT FOR DECLARATORY JUDGMENT,**
**PERMANENT INJUNCTION, AND DAMAGES**

Plaintiffs EC New Vision Ohio, LLC ("Epcon") and Mary Jo Vilardo, in her capacity as Trustee of the Phillip J. Vilardo Sr. Irrevocable Trust (the "Trust") (together, "Plaintiffs"), for their Complaint for Declaratory Judgment, Permanent Injunction, and Damages against Defendant Genoa Township, Ohio (the "Township" or "Defendant"), aver and allege as follows:

## I. INTRODUCTION

1. In order to address the explosive population growth and demand for new housing, the Township has determined that large portions of the Township are better suited as planned residential communities. In recent years, dozens of properties throughout the Township have been rezoned to create residential subdivisions made up of homes, sidewalks, and amenities such as

neighborhood pools and open green space. Plaintiffs have carefully and thoughtfully designed a residential community for its property that complies with the Township's Comprehensive Plan and zoning restrictions. Plaintiffs' community, however, was arbitrarily blocked by a single Township Trustee who possessed a conflict of interest against Plaintiffs' development. The biased Trustee improperly contravened the Township's Comprehensive Plan, arbitrarily overruled the recommendations of the Township's Zoning Commission and County officials, and unilaterally prevented the development from being built in the Trustee's backyard.

2. Private property rights are inviolate under the Ohio Constitution. Ohio townships are creatures of statute and have a very narrow and limited authority to restrict the use of private property through zoning – namely, Township zoning restrictions must be "in the interest of public health and safety" and "in accordance with [the township's] comprehensive plan." Ohio Rev. Code § 519.02.

3. The Township adopted a Comprehensive Plan that encourages planned residential developments, including on Plaintiffs' property. Plaintiffs spent months designing a residential development for their land that fully complied with the Comprehensive Plan. They met with county and local officials, presented at public hearings to the Township's Zoning Commission (the "Zoning Commission"), and amended their development to address the comments from the Zoning Commission and public. The Zoning Commission recommended approval of Plaintiffs' development, finding it to be the most appropriate use of the land. The Delaware County Regional Planning Commission likewise recommended the development's approval. Indeed, all of the evidence established that Plaintiffs' proposed residential development would be a safer, better use of the land and would be completely harmonious with the other residential communities routinely approved throughout the Township.

4. The Township's Board of Trustees, however, arbitrarily denied Plaintiffs' rezoning application by a narrow, 2-1 vote. The deciding vote was cast by the Board's Chair, Renee Vaughan. Yet, Trustee Vaughan had a disqualifying conflict of interest. Trustee Vaughan lives less than a thousand feet from Plaintiffs' planned development. As a matter of Ohio law, Trustee Vaughan's conflict should have prevented her from participating in – and certainly from overseeing and directing – the vote. A township trustee is prohibited from voting, discussing, deliberating, or otherwise using the authority of her position, formally or informally, with respect to any zoning decision that would provide a benefit or detriment to property the trustee owns. *See* R.C. 102.03(D); Ohio Ethics Commission Informal Advisory Op. 1997-INF-1103-1.

5. Worse, the Township's denial of the rezoning was entirely arbitrary. Plaintiffs completed every step necessary to comply with the Comprehensive Plan as well as Township's and community's requests. Plaintiffs followed an excruciating and expensive zoning process, negotiating each step of the way to ensure that their community would be safer for motorists, maintain greenspace and existing trees, and address the existing problematic storm water management issues in the area. Yet, Trustee Vaughan's participation and oversight of the hearing tainted the procedure and deprived Plaintiffs of the opportunity to be heard in a fair and impartial proceeding. Plaintiffs have sought reconsideration of this vote by a fair and impartial panel, but, to date, the Township has refused to take any action to do so.

6. In sum, the Township has blocked Plaintiffs from putting their private property to an entirely legitimate use that is consistent with the Township's Comprehensive Plan and will improve the health and safety of the community – particularly when compared to the property's existing zoning and current vacant state. The Township's actions to impede Plaintiffs'

development are illegal, unconstitutional, and have caused Plaintiffs substantial damages for which

Plaintiffs seek injunctive, declaratory, and monetary relief.

## II.    JURISDICTION AND VENUE

7.      This action arises under the Constitution and laws of the United States, including

42 U.S.C. § 1983.

8.      Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331, 28 U.S.C.

§ 1343(a)(3), 28 U.S.C. § 1367, and 28 U.S.C. § 2201.  Jurisdiction supporting Plaintiffs' claims

for attorneys' fees is conferred by 42 U.S.C. § 1988.

9.      Venue in this Court is proper under 28 U.S.C. § 1391(b)(2), as this is the judicial

district in which a substantial part of the events or omissions giving rise to the claim occurred.

## III.    PARTIES

10.      Plaintiff Mary Jo Vilardo is the Trustee of the Phillip J. Vilardo Sr. Irrevocable

Trust.  The Trust owns 62.054 acres of property located at the northwest corner of Big Walnut

Road and State Route 3, Parcel No. 31724001032000 (the "Property").

11.      Plaintiff EC New Vision Ohio, LLC is a limited liability company organized under

the laws of the state of Ohio.  Epcon is under contract to purchase the Property.  In addition, Epcon

is developing the Property.

12.      Defendant Genoa Township, Ohio is a township located in Delaware County, Ohio.

13.      In addition to the foregoing parties, the Attorney General of the State of Ohio is

being served with a copy of this complaint pursuant to Ohio Revised Code § 2721.12(A).

## IV.    FACTS COMMON TO ALL CLAIMS

### A.      Ohio Townships Have Very Limited Authority to Zone Property.

14.      The right to use and enjoy private property is fundamental in Ohio.  "[T]he founders

of [Ohio] expressly incorporated individual property rights into the Ohio Constitution in terms that

reinforced the sacrosanct nature of the individual's 'inalienable' property rights, which are to be held forever 'inviolate.'" *City of Norwood v. Horney*, 110 Ohio St. 3d 353, 363 (Ohio 2006) (quoting OHIO CONSTITUTION Art. I, Sec. 1, Sec. 19, respectively).

15.     Indeed, "[t]here can be no doubt that **the bundle of venerable rights associated with property is strongly protected in the Ohio Constitution and must be trod upon lightly, no matter how great the weight of other forces**." *Id.* (emphasis added).

16.     Ohio townships have no inherent or constitutionally granted power to zone property. *Bd. of Twp. Trs. of Bainbridge Twp. v. Funtime, Inc.*, 55 Ohio St.3d 106, 108 (Ohio 1990).

17.     Rather, Ohio townships' authority to zone property is determined by the General Assembly. *Id.* ("Whatever police or zoning power townships of Ohio have is that delegated by the General Assembly, and it follows that such power is limited to that which is expressly delegated to them by statute.").

18.     The General Assembly expressly limits townships' power to adopt zoning regulations only to the extent the zoning regulations are "in the interest of the public health and safety" and "*in accordance with a comprehensive plan*." Ohio Rev. Code § 519.02 (emphasis added).

19.     Consequently, Ohio Township zoning actions that exceed this limited authority are void as a matter of law. *See Columbus Bituminous Concrete Corp. v. Harrison Twp. Bd. of Zoning Appeals*, 160 Ohio St.3d 279, 156 N.E.3d 841 (Ohio 2020).

**B.     The Township Adopts a Zoning Resolution and Comprehensive Plan.**

20.     The Township originally adopted the Genoa Township Zoning Resolution ("the "Zoning Resolution") in 1999 and recently amended it in 2019 and 2022.

21.     On December 1, 2016, the Township adopted its Comprehensive Plan. The Comprehensive Plan was further revised on January 7, 2019. The Comprehensive Plan acknowledges the extensive population growth in the Township. The Comprehensive Plan's stated purpose is to "[e]nsure [c]onsistency," by "[p]romot[ing] the legal requirement of reasonableness by avoiding arbitrary decisions." Further, the "Comprehensive Plan provides specific guidance on the appropriate use and development of property in Genoa Township . . . so that [property owners] may reasonably rely on the land uses set forth in the Comprehensive Plan for planning and development purposes." In other words, the "Comprehensive Plan avoids an arbitrary and capricious action by the Genoa Township Trustees, Zoning Commission, [and] Board of Zoning Appeals."

### C.     The Township Regularly Rezones Properties from Rural Residential to Planned Residential District.

22.     While most, if not all of the Township's residential land was originally zoned Rural Residential, the Township has rezoned numerous properties from Rural Residential to Planned Residential District over time.

23.     In fact, the Township has rezoned nearly *one hundred* properties from Rural Residential to Planned Residential District. A summary of the Township's rezoning of land is attached hereto as **Exhibit A**.

24.     The Zoning Resolution sets forth the density requirements for the Planned Residential District.

25.     Section 903.02 of the Zoning Resolution states that "[t]he density of land use within a Planned Residential District shall not exceed 2.2 Dwelling Units per Net Developable Acre when Conservation Development Standards are used or 1.8 Dwelling Units per Net Developable Acre otherwise."

26. The Township routinely approves the rezoning of land from Rural Residential to the Planned Residential District when the accompanying development plan includes a density that is within – and sometimes even in excess of – the requirements set forth in Section 903.02 of the Zoning Resolution.

27. For example, in March 2015, the Township rezoned property now known as the Courtyards on Maxtown from Rural Residential to Planned Residential District. The Courtyards on Maxtown now has a net density of 3.12 units per net acre.

28. The Township rezoned property now known as the Nook from Rural Residential to Planned Residential District in November 2017. The Nook subdivision now has a net density of 1.95 units per net acre.

29. In March 2020, the Township rezoned property now known as the Grove from Rural Residential to Planned Residential District. The Grove now has a net density of 2.2 units per net acre.

30. In sum, the Township has approved the rezoning of property from Rural Residential to Planned Residential Districts to allow the development of property at or above its stated benchmarks for density.

**D.      Plaintiffs Cannot Develop the Property Under Its Current Zoning Classification.**

31. The Property is located at the northwest corner of Big Walnut Road and State Route 3, is approximately 62.054 acres in size, and is nearly surrounded by residential subdivisions:



32. The Property is currently zoned Rural Residential but is located in Planning Area 5 of the Comprehensive Plan. The Township's Comprehensive Plan designates this zone for development of Planned Residential Developments and designates the Property for "Residential or Planned Residential" use. The Property is outlined in red below:



33. Due to the unique characteristics of the Property, developing the Property under the restrictions in the antiquated Rural Residential zoning classification is unsafe, environmentally dangerous, and economically infeasible.

34. First, the Property cannot be developed as Rural Residential in a safe manner due to the Property's shape and orientation. The Property has a "flagstick" shape that has limited access to Big Walnut Road on the narrow "stick" portion of the Property. If the Property were developed Rural Residential, each individual home would need a separate driveway access to Big Walnut Road and State Route 3, a limited access highway. Even if somehow possible, Big Walnut Road and State Route 3 are busy thoroughfares and the addition of multiple driveways would create significant traffic congestion and traffic safety issues with homeowners backing into and out of their driveways onto these roads.

35. Second, developing the Property as Rural Residential poses a danger to the environment for several reasons. Installation of a centralized sanitary sewer system would be cost prohibitive were the Property to be developed as Rural Residential, resulting in homes being served by individual septic systems. However, the Property's existing topography and wetlands already suffer from surface water issues that would not be amenable to septic systems.

36. Third, developing the Property as Rural Residential would not afford the same protections to the wetlands because Rural Residential development does not permit the clustering of homes around the wetlands. In a Planned Residential community, the wetlands can be preserved and managed as a neighborhood amenity. Whereas under Rural Residential development, such neighborhood clustering is not permitted and the wetlands are left as unmanaged and unused vacant land.

37. Fourth, the wetlands present a flooding issue that cannot be alleviated through development of the large residential lots that the Rural Residential zoning classification requires.

38. Fifth, developing the Property as Rural Residential is also economically infeasible. Pursuant to the Zoning Resolution, development in the Rural Residential zoning district would require large lots with a minimum lot area of two acres. In view of the Property's unique shape and orientation, only roughly twenty-two homes could be built as a result. Such few homes would not be able to defray the infrastructure costs necessary to safely build a community at this site.

39. The Property's unique topography further exacerbates its development challenges. The Property consists of .47 acres of wetlands and a 1.25 acre pond, making large portions of the Property uninhabitable and susceptible to flooding absent a regrading of the site. Consequently, housing developed under the Rural Residential classification would need to be clustered *around*

those portions of the Property and would require extensive and prohibitively expensive water management and grading.

40.     In sum, the Property remains undeveloped, vacant land for these reasons and cannot be feasibly developed under the Township's Rural Residential zoning restrictions.  Consistent with the Township's Comprehensive Plan, development of the Property requires its rezoning and development as a planned residential community.

**E.     Plaintiffs Apply to Rezone and Develop the Property Pursuant to the Township's Zoning Resolution and Comprehensive Plan.**

41.     There is a significant demand for new housing in the Township.  In fact, the Building Industry Association of Central Ohio recently concluded that there is a substantial shortage of residential homes in Central Ohio needed to meet projected population and job growth.

42.     In view of this population growth, the Township recognizes that more planned residential communities are needed.  *See, e.g.*, Zoning Resolution § 901 (Delaware County's "increased suburbanization and population growth come [with] increased demands for well-organized residential areas which take into account unique natural features, contemporary land-use concepts, and a balanced residential environment.").

43.     The Comprehensive Plan and Zoning Resolution recognize this reality and encourage the creation of Planned Residential Districts in the Township.

44.     The purpose of the Planned Residential District is, in part, to "promote flexibility of land development for residential purposes while still preserving and enhancing the public health, safety, morals, and general welfare of the inhabitants of the Township.  Such developments shall be based upon a unified development plan conceived and carried out for the entire site."  (Zoning Resolution § 901.)

45.     Consistent with the Zoning Resolution and the Comprehensive Plan, Plaintiffs

applied to rezone the Property to Planned Residential District on March 7, 2022 (the "Rezoning Application"). Plaintiffs also applied for approval of a Preliminary Development Plan for the Courtyards at Big Walnut (the "Development Plan Application") (together, the Rezoning Application and the Development Plan Application are referred to as the "Applications"). A true and accurate copy of the illustrative design for the Courtyards at Big Walnut is below:



46.     The Courtyards at Big Walnut represents an ideal plan to develop the Property in a manner that addresses challenges unique to the Property because it is safe, environmentally friendly, economically feasible, and responsive to market demand for homes of this type.

47.     First, the design of the Courtyards at Big Walnut minimizes traffic and safety concerns. Pursuant to the Development Plan Application, ingress and egress is managed through

a common entrance along Big Walnut Road.  There would be no individual driveways connecting to Big Walnut Road or State Route 3.

48.     Second, the Courtyards at Big Walnut would utilize a centralized sanitary sewer and water service rather than individual septic systems and wells.

49.     Third, the clustering of homes not only protects the wetlands, it preserves them as a managed neighborhood amenity.

50.     Fourth, the Courtyards at Big Walnut addresses flooding concerns.  Not only will the bulk of the Property be graded for the development, it will also preserve roughly 66% of the existing trees.  In addition, the Courtyards at Big Walnut includes several water basins and an underground storm sewer system to manage surface water flows and drainage.

51.     Fifth, the Courtyards at Big Walnut increases the number of new homes in the Township to help satisfy unmet housing demand, while staying within the Zoning Resolution's density requirements for Planned Residential Districts.  This increased volume will also make costly infrastructure such as centralized access roads and sanitary sewer and water service economically feasible.

52.     In short, developing the Property as the Courtyards at Big Walnut is not only economically feasible, it is a healthier and safer use of the Property for both residents and the environment than a Rural Residential alternative.

F.     **The Zoning Commission Recommends Approval of the Applications.**

53.     On July 18, 2022, the Zoning Commission conducted a hearing on the Applications.

54.     With respect to the Rezoning Application, the Zoning Commission recommended approval of zoning the Property to Planned Residential District, finding that:

a.     The rezoning and the development of the Courtyards at Big Walnut would contribute to the orderly development of the Township.

-12-

    b.    Approving the Applications would result in the most appropriate use of land to facilitate and provide adequate public and private improvements.

    c.    The Zoning Resolution permits 2.2 units per net developable acre in a Planned Residential District. The Development Plan Application includes 1.9 units per net developable acre and therefore falls well within the allowable density for a Planned Residential District.

    d.    The Zoning Resolution requires at least 50% open space. The Development Plan Application includes 52% open space, exceeding the requirement.

    e.    The Development Plan Application meets the minimum requirements for the Planned Residential District for building setbacks, height, and square footage, as well as lot size.

    f.    The Development Plan Application meets all of the requirements of Article 9 of the Zoning Resolution, save for two minor divergences related to fencing of small, private courtyards.

55.    The Zoning Commission also recommended approval of the Development Plan Application.

**G.    The Trustees Arbitrarily Deny the Application to Advance One Trustee's Personal Interests.**

56.    On August 29, 2022, the Trustees met to consider Plaintiffs' Applications. Unbeknownst to Plaintiffs, the fix was in from the start.

57.    Trustee Renee Vaughan, who lives just three parcels away from the Property, was biased against the Applications due to her own personal motives. Only two homes separate Trustee Vaughan's home from the Property:

-13-



58.    During the Trustees meeting, Trustee Vaughan was hyper-focused, voicing on-the-record concerns about traffic and the increase in density the Courtyards at Big Walnut would bring to her neighborhood.  However, the evidence in the record did not support her contentions.

59.    Trustee Vaughan's influence over the proceedings was improper.  Ohio law forbids township trustees from voting, discussing, deliberating, or otherwise using the authority of her position, formally or informally, with respect to any zoning decision that would provide a benefit or detriment to property the trustee owns.  *See* R.C. 102.03(D); Ohio Ethics Commission Informal Advisory Op. 1997-INF-1103-1.

60.    Public officials, including township trustees, are barred from participating, as a public official, in land-use decisions near the official's property "because the land-use decision could have a definite and direct beneficial or detrimental financial impact upon the official's … property."  Ohio Ethics Commission Informal Advisory Op. 1997-INF-1103-1.

61.    Thus, public officials living close to land sought to be developed for a residential subdivision are barred from participating in the proceedings in their official capacity because "[a] variety of factors pertaining to the development of the subdivision could affect the value of adjacent or nearby property."  *Id.*

62.     Despite the Applications being entirely consistent with the Zoning Resolution and Comprehensive Plan, as well as recommended by the Zoning Commission and the Delaware County Regional Planning Commission, Trustee Vaughan took over the deliberations at the meeting and brought along Trustee Mark Antonetz to ensure an arbitrary result.  The Trustees voted 2-1 against rezoning the Property to the Planned Residential District without any legitimate basis.

**H.     The Township Refuses to Conduct a Rehearing Despite the Trustee's Conflict of Interest.**

63.     In a letter dated December 22, 2022, Plaintiffs requested that the Township rehear their Applications due to Trustee Vaughan's conflict of interest.

64.     To date, the Township has not provided any substantive response to Plaintiffs' rehearing request.

**V.     CLAIMS FOR RELIEF**

**COUNT I:  42 U.S.C. § 1983**
**VIOLATION OF SUBSTANTIVE DUE PROCESS**

65.     Plaintiffs restate the foregoing paragraphs as if fully rewritten herein.

66.     The Township has deprived Plaintiffs of their property and liberty interests under color of law without due process of law in violation of the Due Process Clause in the United States Constitution.

67.     Plaintiffs' property and liberty interests are of a type protected by the Fourteenth Amendment to the United States Constitution.

68.     Plaintiffs possess legitimate claims of entitlement and justifiable expectations in their property and liberty interests, for among other reasons:

        a.     The Township's current zoning of Plaintiffs' Property is not in accordance with the Comprehensive Plan and is not in the interest of the public health and safety;

-15-

b. Plaintiffs' Rezoning Application is in accordance with the Comprehensive Plan and Zoning Resolution for the Planned Residential District;

c. Plaintiffs' Rezoning Application is in the interest of the public health and safety, such that the Township did not have discretion to deny Plaintiffs' Rezoning Application;

d. Plaintiffs undertook significant actions and made substantial investments in the Property such that the Township's arbitrary departure from the Comprehensive Plan and the interests of the public health and safety would cause substantial detriment to the Plaintiffs; and

e. Plaintiffs expended significant sums to rezone the Property and design and plan the Courtyards at Big Walnut.

69. The Board of Trustee's denial of Plaintiffs' Applications is arbitrary, unreasonable, and does not bear a substantial relationship to the public health, safety, morals, or general welfare.

70. Accordingly, Plaintiffs have suffered, and will continue to suffer, the deprivation of their vested rights under the United States Constitution to use their Property in accordance with the rezoning to Planned Residential District and the Development Plan Application.

<u>**COUNT II: 42 U.S.C. § 1983:**</u>
<u>**VIOLATION OF PROCEDURAL DUE PROCESS**</u>

71. Plaintiffs restate the foregoing paragraphs as if fully rewritten herein.

72. The Township has deprived Plaintiffs of their property and liberty interests under color of law without due process of law in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Sections 1 and 16 of the Ohio Constitution.

73. Plaintiffs' property and liberty interests are of a type protected by the Fourteenth Amendment to the United States Constitution and the Ohio Constitution.

74.     Plaintiffs possess legitimate claims of entitlement and justifiable expectations in their property interests, for among other reasons:

a.      The Township's current zoning of the Property is not in accordance with the Comprehensive Plan;

b.      Plaintiffs' Rezoning Application is in accordance with the Township's Zoning Resolution, the Comprehensive Plan, and is in the interest of the public health and safety, such that the Township did not have the discretion to deny the Rezoning Application;

c.      Plaintiffs undertook significant actions and made substantial investments in their Property such that the Township's denial of the Applications to maintain the Rural Residential zoning classification – an arbitrary departure from the Comprehensive Plan and the interests of public health and safety – caused a substantial detriment to the Plaintiffs; and

d.      Plaintiffs extended significant sums to design and plan the Courtyards at Big Walnut.

75.     Plaintiffs have the right to develop their Property free from arbitrary restrictions imposed by biased officials.

76.     Additionally, Plaintiffs possess a liberty interest to engage in "whatever legal business [it] elects to pursue," including the design and construction of homes, free from the Township's interference based solely on the fact that its municipal officials simply do not desire this type of development. *See Sanderson v. Village of Greenhills*, 726 F.2d 284, 286–87 (6th Cir. 1984).

77.     The Township denied Plaintiffs due process by prohibiting Plaintiffs from engaging in the Township's land-use application process afforded to other landowners in the Township.

Among other things, the Township's Board of Trustees was biased against Plaintiffs' Applications due to Trustee Vaughan's conflict of interest and her deciding vote on the Rezoning Application.

78.     Instead of providing Plaintiffs with an unbiased process free from conflicts of interest, the Trustee Vaughan used her position to ensure that Plaintiffs' Applications were futile. The Township subjected Plaintiffs to a months-long process in which the outcome was preordained against Plaintiffs in order to prevent Plaintiffs' use of the Property in a manner consistent with all applicable, legitimate land-use restrictions.

79.     The Township's actions and omissions have prevented Plaintiffs from putting the Property to economic use and foreclosed Epcon from engaging in its lawful profession within the Township.

80.     The Township deprived Plaintiffs of their property and liberty interests by denying Plaintiffs the opportunity to have their Applications reviewed and evaluated by an unbiased arbitrator.

81.     As a result, Plaintiffs have suffered, and will continue to suffer, the deprivation of their vested rights under the United States Constitution and the Ohio Constitution.

### COUNT III: 42 U.S.C. § 1983: <br> VIOLATION OF EQUAL PROTECTION

82.     Plaintiffs restate the foregoing paragraphs as if fully rewritten herein.

83.     Plaintiffs have been subjected to unequal treatment of the law under color of law in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

84.     The Township routinely rezones similarly situated properties from the Rural Residential zoning designation to Planned Residential District, including for developments that deviated from the Zoning Resolution.

85.     Plaintiffs' Rezoning Application and Development Plan Application complied with all of the legitimate zoning standards set by the Township and were in the interest of public health and safety.

86.     The Township treated Plaintiffs differently than the other similarly situated applicants who applied for and received rezoning from Rural Residential to Planned Development District zoning in that:

        a.     The Zoning Commission recommended approval of the Rezoning Application to rezone the Property to Planned Residential District and the Preliminary Development Plan;

        b.     The Trustees denied the Rezoning Application; and

        c.     The Trustees' denial was arbitrary and unreasonable.

87.     Plaintiffs have been deprived of those property and liberty interests by discriminatory treatment in comparison with other similarly situated persons.

88.     The Township has no rational basis for the discriminatory treatment of Plaintiffs.

89.     Accordingly, Plaintiffs have suffered, and will continue to suffer, from the Township's unequal treatment of the law.

## COUNT IV: DECLARATORY JUDGMENT

90.     Plaintiffs restate the foregoing paragraphs as if fully rewritten herein.

91.     The Trustees' refusal to rezone the Property to Planned Residential District and to approve the Development Plan Application was unconstitutional, unreasonable, and not substantially related to the public health, safety, morals, or general welfare.

92.     The rezoning of the Property to the Planned Development District, as set forth in the Rezoning Application, is constitutional, reasonable, substantially related to the public health and safety, and consistent with the Comprehensive Plan and Zoning Resolution.

93.     Therefore, Plaintiffs are entitled to a declaration that rezoning the Property to Planned Residential District and approving of the Development Plan Application is constitutional, reasonable, and substantially related to the public health, safety, morals, or general welfare.

94.     Therefore, Plaintiffs are entitled to a declaration that subjecting the Property to a Rural Residential zoning classification is unconstitutional, unreasonable, and/or not substantially related to the public health, safety, morals, or general welfare.

## COUNT V:  42 U.S.C. § 1983:
## IN THE ALTERNATIVE, REGULATORY TAKING

95.     Plaintiffs restate the foregoing paragraphs as if fully rewritten herein.

96.     The Township's imposition of the Rural Residential zoning classification on Plaintiffs' Property – and failure to remove the Rural Residential zoning classification – interferes with Plaintiffs' investment-backed expectations and results in severe detrimental economic impacts to Plaintiffs.

97.     The Township's imposition of the Rural Residential zoning classification, as applied to Plaintiffs' Property, is functionally equivalent to a direct appropriation of the Property and therefore constitutes a regulatory taking.

98.     The Township has not provided Plaintiffs just compensation for their Property.

99.     Accordingly, Plaintiffs have suffered, and will continue to suffer, the taking of their Property without just compensation in violation of the Fifth Amendment of the United States Constitution.

## COUNT VI:  42 U.S.C. § 1983:  DUE PROCESS TAKING

100.    Plaintiffs restate the foregoing paragraphs as if fully rewritten herein.

101.    The Township has deprived Plaintiffs of their Property and liberty interests under color of law without due process of law in violation of the Due Process Clause in the United States Constitution.

102.    Plaintiffs' property and liberty interests are of a type protected by the Fourteenth Amendment to the United States Constitution.

103.    The Township's imposition of the Rural Residential zoning classification to Plaintiffs' Property – and failure to remove the Rural Residential zoning classification – goes so far and destroys the value of Plaintiffs' Property to such an extent that it has the same effect as a taking by eminent domain.  This imposition is an invalid exercise of the police power.

104.    Plaintiffs have suffered monetary damages as a result of the Township's invalid exercise of the police power and the Township's application of the Rural Residential zoning classification to Plaintiffs' Property must be invalidated.

## VI.    PRAYER FOR RELIEF

WHEREFORE, in consideration that the foregoing constitutes violations of the Plaintiffs' rights as guaranteed by the United States and Ohio Constitutions, Plaintiffs seek:

(a)    A declaration that rezoning the Property to Planned Residential District and approving of the Development Plan Application is constitutional, reasonable, and substantially related to the public health, safety, morals, or general welfare;

(b)    A declaration that subjecting the Property to a Rural Residential zoning classification is unconstitutional, unreasonable, and/or not substantially related to the public health, safety, morals, or general welfare;

(c)     A permanent injunction enjoining the Township from preventing Plaintiffs from completing their residential community based on the unconstitutional denial of its application to rezone the Property to Planned Residential District;

(d)     Compensatory damages;

(e)     Attorney fees and costs pursuant to 42 U.S.C. § 1988; and

(f)     Any other declarative, injunctive or other equitable relief this Court deems just and appropriate.

Respectfully submitted,

*/s/ Joseph R. Miller*
Joseph R. Miller (0068463), *Trial Attorney*
Christopher L. Ingram (0086325)
Elizabeth S. Alexander (0096401)
Jordan C. Patterson (0101174)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Phone: (614) 464-6233  Fax: (614) 719-4630
jrmiller@vorys.com
clingram@vorys.com
esalexander@vorys.com
jcpatterson@vorys.com

*Counsel for Plaintiffs*

## **JURY DEMAND**

Plaintiffs request a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Joseph R. Miller*

Joseph R. Miller (0068463), *Trial Attorney*
Christopher L. Ingram (0086325)
Elizabeth S. Alexander (0096401)
Jordan C. Patterson (0101174)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Phone: (614) 464-6233  Fax: (614) 719-4630
jrmiller@vorys.com
clingram@vorys.com
esalexander@vorys.com
jcpatterson@vorys.com

*Counsel for Plaintiffs*

44090726

# EXHIBIT A

**GENOA TOWNSHIP SUBDIVISION SUMMARY**

| SUBDIVISION | DENSITY (NDU or GDU) PER PLAN | DENSITY (NDU) UNITS/NET ACREAGE | GROSS ACREAGE | NET ACREAGE (LESS 15%) | # OF UNITS | UNIT TYPE | PLANNING AREA | ZONING DISTRICT | DATE FDP APPROVED | DATE FDP AMENDED | APPLICANT | DEVELOPER | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AUGUSTA WOODS | .58 GDU | 0.682355908 | 79.31 | 67.4135 | 46 | SFR | I | SR | N/A | | | | |
| BARRINGTON ESTATES | 2.64 GDU | 3.10235618 | 387.182 | 329.1047 | 1021 | CLSTR | I | PRD | 0/0/1996 | | Chatham Corporation | Chatham Corporation | Orig PD-1; 677 SFR, 344 Cluster SF or Common Wall; in conjunction with Harvest Wind & Park Bend |
| BAY RIDGE ESTATES | 0.306 GDU | 0.360013441 | 88.232 | 74.9972 | 27 | SFR | II | RR | | | | | |
| BLACKHAWK CREEK | | | | | 16 | SFR | I | SR | N/A | | | | |
| BLACKHAWK FOREST | 1.29 GDU | 1.519756839 | 52.64 | 44.744 | 68 | SFR | I | SR | 5/16/1988 | | Spinosi | Freeman Road Development Co. | |
| BOULDER RIDGE | 1.7 GDU | 2.060970374 | 13.7 | 11.645 | 24 | SFR | I | SR w/ overaly | 8/10/2005 | | McCann, Pacella, Bason | M/I Homes | |
| CAMBRIDGE | 2.06 GDU | 2.391513983 | 30.5 | 25.925 | 62 | SFR | I | | 11/16/1998 | | Cambridge Developers | | Net Acreage 17.68; Net density 3.51 (per FDP) |
| CONDOMINIUMS AT GENOA GROVE, THE | 2.84 GDU | 3.334549054 | 22.58 | 19.193 | 64 | CLSTR | I | PRD | | | | Mid_Ohio Development Group | |
| COPTHORNE WOODS | | | | | | | IV | RR | N/A | | | | |
| COURTYARDS ON MAXTOWN | 2.65 GDU; 3.10 NDU | 3.117007673 | 14.72 | 12.512 | 39 | CLSTR | I | PRD | 3/26/2015 | | Epcon Communities | Epcon Communities | 11/25/2014 Preliminary Approval by Trustees |
| COURTYARDS ON TUSSIC | 4.17 GDU | 4.751868174 | 7.675 | 6.52375 | 31 | CLSTR | I | PRD | 12/1/2011 | 7/10/2012 | Epcon Communities | Epcon Communities | 8/16/2011 Preliminary Approval by Trustees |
| COVINGTON MEADOWS | 2.05 GDU | 2.412660496 | 98.5 | 83.725 | 202 | SFR | I | PRD | 4/22/1999 | | M/I Schottenstein Home, Inc. | M/I Schottenstein Home, Inc. | Orig PD-1 w/conservation |
| EAGLE TRACE | 2.55 GDU | 2.599179207 | 86 | 73.1 | 190 | SFR | I | PRD | 8/10/1994 | 6/11/2003 | Romanelli & Hughes | | Orig PD-1 |
| ESTATES AT MEDALLION | 1.43 GDU | 1.687245954 | 7.67 | 6.5195 | 11 | SFR | I | SR | 10/13/2004 | 10/13/2004 | Galbury Group | | Orig PD-1 w/conservation |
| FERIDEAN COMMONS/Cluster Homes | 2.77 GDU | 3.261933239 | 10.82 | 9.197 | 30 | CLSTR | I | PCF | 06/27/2005; 12/13/2010 | | Frank & Rita Blateri | The Feridean Group | Orig 18 units, then 12 units added |
| FERIDEAN COMMONS/Main Building | N/A | N/A | 7 | 5.95 | | | I | PCF | | | The Feridean Group | The Feridean Group | Phase I; 45,247 Sq. Ft.; 52 units |
| GALENA POINTE | 0.569 | 0.669438141 | 35.148 | 29.8758 | 20 | SFR | III | RR | 0/0/1998 | | | | |
| GATES AT HOOVER | | | | | 14 | | IV | RR | N/A | | | | |
| GENOA FARMS | 1.98 GDU | 2.339544878 | 73.418 | 62.4053 | 146 | SFR | I | PRD | 11/15/2000 | 11/14/2001 10/28/2002 | Wright & Blateri Properties | Dominion Homes, Inc. | Orig PD-1 |
| GENOA GROVE | 2.13 GDU | 2.509803922 | 30 | 25.5 | 64 | CLSTR | I | PRD | 10/29/1999 | | Danter Development Services | | Conservation stds used. Net Density noted as 6 units/acre; 100% cluster. |
| GENOA VIEW | | | | | 4 | SFR | III | RR | | | | | |

**EXHIBIT A**

**GENOA TOWNSHIP SUBDIVISION SUMMARY**

| SUBDIVISION | DENSITY (NDU or GDU) PER PLAN | DENSITY (NDU) UNITS/NET ACREAGE | GROSS ACREAGE | NET ACREAGE (LESS 15%) | # OF UNITS | UNIT TYPE | PLANNING AREA | ZONING DISTRICT | DATE FDP APPROVED | DATE FDP AMENDED | APPLICANT | DEVELOPER | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GLADE AT HIGHLAND LAKES, THE | 0.89 GDU | 1.053115643 | 50.271 | 42.73035 | 45 | SFR | V | PRD | 8/17/2015 | | | | Orig rezoning 7/11/2007 as the Reserve at Big Walnut |
| GRAND OAK & RETREAT AT GRAND OAK | 1.35 GDU | 1.604278075 | 145.2 | 123.42 | 198 | | V | PRD | 4/23/2001 | | | | Orig PD-1 w/conservation; 130 SFR, 68 Condos (4.3 condo units/acre) |
| HARVEST WIND | 1.76 GDU | 3.074642886 | 257.897 | 219.21245 | 674 | I | | PRD | 5/13/1993 | 12/20/1994; 12/9/2002; 9/10/2003 | Bob Webb | | Rezoned 387 acres 10/2/1991 in conjunction with Barrington Estates and Park Bend; orig PD-1; 34.7% Cluster Homes |
| HARVEST WIND, MEADOWS AT | 3.94 GDU | 4.638150629 | 15.98 | 13.583 | 63 | CLSTR | I | PRD | 4/14/2003 | | Bruce Davidson | Duffy Homes | |
| HARVEST WIND, THE VILLAGE AT | 3.45 GDU | 4.076257369 | 30.016 | 25.5136 | 104 | CLSTR | I | PRD | | 4/21/1997; 3/3/1999 | Bruce Davidson | Bob Webb Builders; Romanelli & Hughes | Orig PD-1 |
| HICKORY WOODS | 2.74 GDU | 3.225149075 | 33.195 | 28.21575 | 91 | SFR | V | RR | N/A | | Denise Ranck | | |
| HIGHLAND HILLS AT THE LAKES | 2.63 GDU | 2.656216934 | 40.305 | 34.25925 | 91 | SFR | I | PRD | 1/11/1993 | 3/14/1994 | Manor Ridge Development/ John E. Leppert | | Subdivision split between Genoa & Orange TWPs; 133 total lots approved. |
| HIGHLAND LAKES/SECTION 1 | 1.20 GDU | 1.334281678 | 54.667 | 46.46695 | 62 | SFR | I | PRD | 6/15/1989 | | P.C./Indian Run Joint Venture | | Orig PD-1 |
| HIGHLAND LAKES/SECTION 4 | 1.69 GDU | 1.990162909 | 16.552 | 14.0692 | 28 | SFR | I | PRD | 12/2/1991 | | P.C./Indian Run Joint Venture | | Orig PD-1 |
| HIGHLAND LAKES/COMBINED ALL SECTIONS | 1.26 GDU | 1.486714963 | 71.219 | 60.53615 | 90 | | I | PRD | | | | | |
| HIGHLAND LAKES EAST/SECTION 1 | 2.06 GDU | 2.420794626 | 33.047 | 28.08995 | 68 | SFR | I | PRD | 2/5/1992 | | P.C./Indian Run Joint Venture | | Orig PD-1; Rezoned 6/15/1989 |
| HIGHLAND LAKES EAST/SECTION 3 PART 1 | 1.86 GDU | 2.18949092 | 24.717 | 21.00945 | 46 | SFR | I | PRD | | | P.C./Indian Run Joint Venture | | Orig PD-1 |
| HIGHLAND LAKES EAST/SECTION 3 PART 2 | 2.40 GDU | 2.824376725 | 9.997 | 8.49745 | 24 | SFR | I | PRD | | | P.C./Indian Run Joint Venture | | Orig PD-1 |
| HIGHLAND LAKES EAST/SECTION 3 PART 3 | 2.41 GDU | 2.830849179 | 23.273 | 19.78205 | 56 | SFR | I | PRD | | | P.C./Indian Run Joint Venture | | Orig PD-1 |
| HIGHLAND LAKES EAST/SECTION 4 PART 1 | 1.10 GDU | 1.292943224 | 10.919 | 9.28115 | 12 | CLSTR | I | PRD | | | P.C./Indian Run Joint Venture | | Orig PD-1 |
| HIGHLAND LAKES EAST/SECTION 4 PART 2 | 3.04 GDU | 3.578164253 | 7.891 | 6.70735 | 24 | CLSTR | I | PRD | 12/2/1991 | | P.C./Indian Run Joint Venture | | Orig PD-1 |
| HIGHLAND LAKES EAST/SECTION 4 PART 3 | 3.330 GDU | 3.918303375 | 6.005 | 5.10425 | 20 | CLSTR | I | PRD | 12/2/1991 | | Planned Communities Devel Co., Inc. | | Orig PD-1 |

**GENOA TOWNSHIP SUBDIVISION SUMMARY**

| SUBDIVISION | DENSITY (NDU or GDU) PER PLAN | DENSITY (NDU) UNITS/NET ACREAGE | GROSS ACREAGE | NET ACREAGE (LESS 15%) | # OF UNITS | UNIT TYPE | PLANNING AREA | ZONING DISTRICT | DATE FDP APPROVED | DATE FDP AMENDED | APPLICANT | DEVELOPER | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HIGHLAND LAKES EAST/SECTION 4 PART 4 | 2.47 GDU | 2.900342698 | 7.707 | 6.55095 | 19 | CLSTR | I | PRD | 12/2/1991 | | Planned Communities Devel Co., Inc. | | Orig PD-1 |
| HIGHLAND LAKES EAST/SECTION 4 PART 5 | 1.90 GDU | 2.231545122 | 10.544 | 8.9624 | 20 | CLSTR | I | PRD | 12/2/1991 | | Planned Communities Devel Co., Inc. | | Orig PD-1 |
| HIGHLAND LAKES EAST/SECTION 5 PART 1 | 1.95 GDU | 2.2878796 | 16.455 | 13.98675 | 32 | SFR | I | PRD | | | P.C./Indian Run Joint Venture | | Orig PD-1 |
| HIGHLAND LAKES EAST/SECTION 5 PART 2 | 1.82 GDU | 2.140204818 | 10.994 | 9.3449 | 20 | SFR | I | PRD | | | P.C./Indian Run Joint Venture | | Orig PD-1 |
| HIGHLAND LAKES EAST/SECTION 6 PART 1 | 2.26 GDU | 2.654958945 | 18.168 | 15.4428 | 41 | SFR | I | PRD | | | Planned Communities Devel Co., Inc. | | |
| HIGHLAND LAKES EAST/SECTION 7 | 1.95 GDU | 2.292957411 | 12.827 | 10.90295 | 25 | SFR | I | PRD | 6/21/1993 | | ONURB Partnership | | |
| HIGHLAND LAKES EAST/SECTION 8 PART 1 | 2.66 GDU | 3.13051226 | 9.771 | 8.30535 | 26 | SFR | I | PRD | | | Borror Corporation | Borror Corporation | |
| HIGHLAND LAKES EAST/SECTION 8 PART 2 | 2.89 GDU | 3.398849079 | 10.038 | 8.5323 | 29 | SFR | I | PRD | | | Dominion Homes, Inc. | Dominion Homes, Inc. | |
| HIGHLAND LAKES EAST/SECTION 9 | 1.16 GDU | 1.363549592 | 21.57 | 18.3345 | 25 | SFR | I | PRD | | | Planned Communities Devel Co., Inc. | Homewood Corporation | |
| HIGHLAND LAKES EAST/SECTION 10 PART 1 | 1.42 GDU | 1.669572365 | 18.321 | 15.57285 | 26 | SFR | I | PRD | | | Planned Communities Devel Co., Inc. | | |
| HIGHLAND LAKES EAST/SECTION 10 PART 2 | 1.69 GDU | 1.987818647 | 14.796 | 12.5766 | 25 | SFR | I | PRD | | | Planned Communities Devel Co., Inc. | | |
| HIGHLAND LAKES EAST/SECTION 11 PART 1 | 2.21 GDU | 2.599798206 | 9.503 | 8.07755 | 21 | SFR | I | PRD | | | Planned Communities Devel Co., Inc. | | |
| HIGHLAND LAKES EAST/SECTION 11 PART 2 | 2.80 GDU | 3.292038465 | 6.79 | 5.7715 | 19 | SFR | I | PRD | | | DHMI Lakes, LTD. | Dominion Homes, Inc. & M/I Schottenstein Homes, Inc. | |
| HIGHLAND LAKES EAST/SECTION 11 PART 3 | 2.65 GDU | 3.120040883 | 10.935 | 9.29475 | 29 | SFR | I | PRD | | | DHMI Lakes, LTD. | Dominion Homes, Inc. & M/I Schottenstein Homes, Inc. | |
| HIGHLAND LAKES EAST/SECTION 11 PART 4 | 2.03 GDU | 2.387402817 | 11.334 | 9.6339 | 23 | SFR | I | PRD | | | DHMI Lakes, LTD. | Dominion Homes, Inc. & M/I Schottenstein Homes, Inc. | |

GENOA TOWNSHIP SUBDIVISION SUMMARY

| SUBDIVISION | DENSITY (NDU or GDU) PER PLAN | DENSITY (NDU) UNITS/NET ACREAGE | GROSS ACREAGE | NET ACREAGE (LESS 15%) | # OF UNITS | UNIT TYPE | PLANNING AREA | ZONING DISTRICT | DATE FDP APPROVED | DATE FDP AMENDED | APPLICANT | DEVELOPER | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HIGHLAND LAKES EAST/SECTION 11 PART 5 | 2.63 GDU | 3.09210042 | 7.99 | 6.7915 | 21 | SFR | | I | PRD | | DHMI Lakes, LTD. | Dominion Homes, Inc. & M/I Schottenstein Homes, Inc. | |
| HIGHLAND LAKES EAST/SECTION 12 | 2.91 GDU | 3.417489 | 2.754 | 2.3409 | 8 | SFR | | I | PRD | | Planned Communities Devel Co., Inc. | | |
| HIGHLAND LAKES EAST/SECTION 13 | 2.60 GDU | 3.059435416 | 4.999 | 4.24915 | 13 | SFR | | I | PRD | | Planned Communities Devel Co., Inc. | | |
| HIGHLAND LAKES EAST/SECTION 14 PART 1 | 3.12 GDU | 3.684982096 | 7.343 | 6.24155 | 23 | SFR | | I | PRD | | DHMI Lakes, LTD. | Dominion Homes, Inc. & M/I Schottenstein Homes, Inc. | |
| HIGHLAND LAKES EAST/SECTION 14 PART 2 | 2.77 GDU | 3.255146728 | 15.541 | 13.20985 | 43 | SFR | | I | PRD | | DHMI Lakes, LTD. | Dominion Homes, Inc. & M/I Schottenstein Homes, Inc. | |
| HIGHLAND LAKES EAST/SECTION 15 | 1.81 GDU | 2.12359312 | 2.77 | 2.3545 | 5 | SFR | | I | PRD | | Planned Communities Devel Co., Inc. | | |
| HIGHLAND LAKES EAST/COMBINED ALL SECTIONS | 2.14 GDU | 2.519078289 | 346.999 | 294.94915 | 743 | | I | PRD | | | | | Orig PD-1; Approved for 350 acres and 746 Homes. |
| HIGHLAND LAKES ESTATES/SECTION 1 PHASE 1 | 2.57 GDU | 3.020778054 | 14.41 | 12.2485 | 37 | | I | | 9/14/1992 | | Borror Corporation | Borror Corporation | |
| HIGHLAND LAKES ESTATES/SECTION 1 PHASE 2 | 3.76 GDU | 4.420827402 | 6.653 | 5.65505 | 25 | | I | | | | Borror Corporation | Borror Corporation | |
| HIGHLAND LAKES ESTATES/SECTION 1 PHASE 3 | 3.109 GDU | 3.657644477 | 10.936 | 9.2956 | 34 | | I | | | | Borror Corporation | Borror Corporation | |
| HIGHLAND LAKES ESTATES/SECTION 1 PHASE 4 | 4.071 GDU | 4.789309026 | 7.615 | 6.47275 | 31 | | I | | | | Borror Corporation | Borror Corporation | |
| HIGHLAND LAKES ESTATES/COMBINED ALL SECTIONS | 3.21 GDU | 3.771690935 | 39.614 | 33.6719 | 127 | | I | | | | | | |
| HIGHLAND LAKES NORTH/SECTION 1 | 1.92 GDU | 2.256476794 | 25.026 | 21.2721 | 48 | SFR | | I | PRD | 6/1/1992 | | P.C./Indian Run Joint Venture | |
| HIGHLAND LAKES NORTH/SECTION 2 | 2.07 GdU | 2.431282502 | 8.71 | 7.4035 | 18 | SFR | | I | PRD | 6/1/1992 | | P.C./Indian Run Joint Venture | |
| HIGHLAND LAKES NORTH/SECTION 3 | 2.18 GDU | 2.568270371 | 34.814 | 29.5919 | 76 | SFR | | I | PRD | 6/12/1993 | | P.C./Indian Run Joint Venture | |

**GENOA TOWNSHIP SUBDIVISION SUMMARY**

| SUBDIVISION | DENSITY (NDU or GDU) PER PLAN | DENSITY (NDU) UNITS/NET ACREAGE | GROSS ACREAGE | NET ACREAGE (LESS 15%) | # OF UNITS | UNIT TYPE | PLANNING AREA | ZONING DISTRICT | DATE FDP APPROVED | DATE FDP AMENDED | APPLICANT | DEVELOPER | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HIGHLAND LAKES NORTH/SECTION 4 | 1.78 GDU | 2.101411372 | 25.753 | 21.89005 | 46 | SFR | I | PRD | 6/12/1993 | | Barntrim Limited Partnership | | |
| HIGHLAND LAKES NORTH/SECTION 5 PART 1 | 1.59 GDU | 1.875125186 | 13.803 | 11.73255 | 22 | SFR | I | PRD | 8/17/1995 | 4/16/2012 | Planned Communities Devel Co., Inc. | | |
| HIGHLAND LAKES NORTH/SECTION 5 PART 2 | 2.02 GDU | 2.371650867 | 8.929 | 7.58965 | 18 | SFR | I | PRD | 10/23/1996 | | Planned Communities Devel Co., Inc. | | |
| HIGHLAND LAKES NORTH/SECTION 6 SECTION 1 | 2.19 GDU | 2.577266448 | 11.412 | 9.7002 | 25 | SFR | I | PRD | 8/17/1995 | | Planned Communities Devel Co., Inc. | | |
| HIGHLAND LAKES NORTH/SECTION 6 SECTION 2 | 2.37 GDU | 2.792126204 | 7.163 | 6.08855 | 17 | SFR | I | PRD | 8/17/1995 | | Planned Communities Devel Co., Inc. | | |
| HIGHLAND LAKES NORTH/SECTION 7 | 1.44 GDU | 1.697998787 | 9.7 | 8.245 | 14 | SFR | I | PRD | 10/23/2000 | | Planned Communities Devel Co., Inc. | | |
| HIGHLAND LAKES NORTH/ COMBINED ALL SECTIONS | 1.95 GDU | 2.299343796 | 145.31 | 123.5135 | 284 | SFR | I | PRD | | | | | |
| HIGHLAND LAKES SOUTH/SECTION 1 | 1.61 GDU | 1.898786072 | 27.262 | 23.1727 | 44 | SFR | I | PRD | 7/18/1988 | | Minnie R. Moss | M/I Schottenstein Homes, Inc. | Orig PD-1 |
| HIGHLAND LAKES SOUTH/SECTION 2 | 1.58 GDU | 1.86275573 | 46.105 | 39.18925 | 73 | SFR | I | PRD | | | M/I Schottenstein Homes, Inc. | M/I Schottenstein Homes, Inc. | Orig PD-1 |
| HIGHLAND LAKES SOUTH/ COMBINED ALL SECTIONS | 1.59 GDU | 1.88 NDU | 73.367 | 62.36195 | 117 | SFR | I | PRD | | | | | |
| HOOVER WOODS | | | | | 32 | | III | RR | | | | | |
| LAKE OF THE WOODS ESTATES | 0.40 GDU | 0.475803037 | 37.089 | 31.52565 | 15 | SFR | II | RR | | | | | |
| LAKE OF THE WOODS/#5 | 0.77 GDU | 0.899928006 | 22.224 | 18.8904 | 17 | SR | II | RR | 7/15/1996 | | | | |
| LAKES CONDOMINIUM, THE | 5.88 GDU | 6.922628341 | 15.635 | 13.28975 | 92 | CLSTR | I | PRD | 1993? | 12/9/2002 | Boyer | | 23 Buildings |
| LINKS AT MEDALLION ESTATES, THE | 5.57 GDU | 6.557197891 | 6.459 | 5.49015 | 36 | CLSTR | I | PRD | | | | | |
| LONDON CROSSING | 1.29 GDU | 1.515169174 | 10.094 | 8.5799 | 13 | SFR | I | SR | | 5/27/2014 | Holmes | Romanelli & Hughes | |
| MANORS AT WILLOW BEND, THE | 1.28 GDU | 1.510716646 | 12.46 | 10.591 | 16 | SFR | I | SR | 11/15/2004 | 10/24/2005 | Edwards Land Co. | | |
| MANSARD ESTATES | 1.10 GDU | 1.293319163 | 104.61 | 88.9185 | 115 | SFR | V | PRD | 6/12/2006 | | Romanelli & Hughes | Romanelli & Hughes; M/I Showcase Home; Romanelli Custom Homes | Orig PD-1; Rezoning & Prelim DP 11/9/2005 |
| MAPLE CREEK (aka VILLAS AT MAPLE CREEK) | 3.20 GDU | 3.764705882 | 31.25 | 26.5625 | 100 | CLSTR | I | PRD | 12/18/2002 | 9/21/2005; 5/22/2006; 10/25/2006 | Epcon Group | Epcon Group | Orig PD-1; sections located in both Genoa and Orange Townships |

**GENOA TOWNSHIP SUBDIVISION SUMMARY**

| SUBDIVISION | DENSITY (NDU or GDU) PER PLAN | DENSITY (NDU) UNITS/NET ACREAGE | GROSS ACREAGE | NET ACREAGE (LESS 15%) | # OF UNITS | UNIT TYPE | PLANNING AREA | ZONING DISTRICT | DATE FDP APPROVED | DATE FDP AMENDED | APPLICANT | DEVELOPER | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MAPLE RUN | 1.06 GDU | 1.24762691 | 28.289 | 24.04565 | 30 | SFR | | I | SR | | 5/3/1993; 11/8/1993 3/14/1994 | | Borror Corporation | |
| MEADOWOOD | 2.18 GDU | 2.567476492 | 31.159 | 26.48515 | 68 | CLSTR | | I | PRD | 7/14/1999 | | | Epcon | Orig PD-1 |
| MEDALLION ESTATES CLUB VILLAS | 3.46 GDU | 4.072845756 | 10.11 | 8.5935 | 35 | CLSTR | | I | PRD | | | Champions Development | | |
| MEDALLION ESTATES | 0.66 GDU | 0.776490147 | 601.5 | 511.275 | 397 | SFR/ CLSTR | | I | PRD | 4/27/1988 | | Inland Development Company | | Orig PD-1 |
| MEDALLION, THE WOODS AT | 4.84 GDU; 5.61 NDU | 5.342314616 | 10.13 | 8.6105 | 46 | CLSTR | | I | PRD | 1/10/2001 | 9/22/2003 | | | Located w/in Medallion Estates; PRD Code compliant based on connecting both areas. |
| MEDALLION ESTATES/COMBINED ALL SECTIONS | 0.777 GDU | 0.914 NDU | 621.74 | 528.479 | 478 | | I | | | | | | Builder projected total of 612.99 GDU; 397 SFR (77%), 2.13 GDU; 120 cluster (23%), 6.00 GDU; 517 total DU; overall 0.84 GDU |
| MIRASOL | 1.335 NDU | 1.638761097 | 58.868 | 50.0378 | 82 | SFR | V | PRD | 6/6/2013 | | Romanelli & Hughes | Romanelli & Hughes | Off-site Open Space (13 acres) located west of S Rte 3 & north of Genoa Park; developed in conjunction with Vinmar Village. |
| NORTHERN LAKES | 2.4 GDU; 3.0 NDU | 2.795676575 | 113.2 | 96.22 | 269 | PRD | I | PRD | 5/24/1989 | 11/6/1993 | Maxtown Road Associates | Homewood Corporation | Orig PD-1; orig name North Point |
| OAK HILL & OAKMONT | 0.8 GDU; 1.0 NDU | 0.941176471 | 25 | 21.25 | 20 | SFR | I | SR | | 1/4/1993 | | | |
| OAKS AT HIGHLAND LAKES & HOMESTEAD COMMUNITIES | 1.70 GDU | 1.995103759 | 192.825 | 163.90125 | 327 | CLSTR | I | PRD | 5/1/2000 | 10/25/2000 4/22/2002 1/26/2004; 05/24/2004; 9/26/2005 | | | Orig PD-1; 214 SFR, 113 Cluster/Condo; See Villas at Walnut Grove (originally Section 3 of Oaks at Highland Lakes) |
| ORCHARD LAKES | 2.6 GDU | 3.129124527 | 73.315 | 62.31775 | 195 | SFR/ CLSTR | I | PRD | 8/30/1993 | | | Rockford Homes | Orig PD-1; 135 SFR, 60 Condos |

GENOA TOWNSHIP SUBDIVISION SUMMARY

| SUBDIVISION | DENSITY (NDU or GDU) PER PLAN | DENSITY (NDU) UNITS/NET ACREAGE | GROSS ACREAGE | NET ACREAGE (LESS 15%) | # OF UNITS | UNIT TYPE | PLANNING AREA | ZONING DISTRICT | DATE FDP APPROVED | DATE FDP AMENDED | APPLICANT | DEVELOPER | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PARK BEND | 3.17 GDU | 3.734418461 | 45.68 | 38.828 | 145 | SFR | I | PRD | 4/19/1993 | | Chatham Maxtown Joint Venture | Dominion | Orig PD-1; In conjunction with Barrington Estates & Harvest Wind rezoned 10/02/1991 |
| PLUM ESTATES | | | | | 30 | | V | RR | | | | | |
| SAGE CREEK | 0.437 GDU | 0.514549209 | 89.17 | 75.7945 | 39 | SFR | III | RR | 1/17/2001 | | Trenton Land Co./Wm. R Schlanger Jr. | | |
| SANCTUARY AT THE LAKES | 1.8 GDU; 2.4 NDU | 2.078889331 | 13.016 | 11.0636 | 23 | SFR | I | PRD | 9/4/2012 | | Leveque Estates, LLC. | M/I Homes | |
| SHEFFIELD PARK | 1.10 GDU | 1.291918637 | 214 | 181.9 | 235 | SFR | V | PRD | 5/23/2001 | 1/28/2002; 10/26/2005; 9/15/2011; 10/17/2011 | | | Orig PD-1 |
| SHELLBARK RIDGE & SHERBROOK 9 & 10 | 2.28 GDU | 2.677267152 | 115.57 | 98.2345 | 263 | SFR | I | PRD | 6/14/1995 | 11/22/2004 | Walker, Vitcor, & Deagle. | | Orig PD-1 |
| SHERBROOK (1-4) | 2.4 GDU | 2.828282828 | 99 | 84.15 | 238 | SFR | I | PRD | 9/7/1993 | 9/29/1997 | Ruth Dillon | | Orig PD-1 |
| SHERBROOK (5-8) | 2.4 GDU | 2.823529412 | 100 | 85 | 240 | SFR/ CLSTR | I | PRD | 7/14/1997 | 2/6/2002 | Diocese Property | | Orig PD-1 |
| SLANE RIDGE | 1.73 GDU | 2.038158863 | 10.39 | 8.8315 | 18 | SFR | I | SR | 5/12/1999 | | Mason/Slane Co. | Canini | |
| SORRENTO AT HIGHLAND LAKES | 1.37 GDU | 1.596825044 | 30.207 | 25.67595 | 41 | CLSTR | I | PRD | 1/28/2008 | 6/12/2013 | Jean Shawd | Romanelli & Hughes | Orig PD-1; rezoned 6/13/2007 |
| STONE'S THROW | 0.44 GDU | 0.517032529 | 15.928 | 13.5388 | 7 | SFR | III | RR | | | Decenzo | | |
| TWIN ACRES | | | | | | | I | RSR | | | | | |
| VILLAS AT HIGHLAND LAKES | 5.53 GDU | 6.505828138 | 10.85 | 9.2225 | 60 | CLSTR | I | PRD | 1/29/1996 | | | Borror Corporation | |
| VILLAS AT WALNUT GROVE, THE | 2.64 GDU | 3.100682746 | 19.73 | 16.7705 | 52 | CLSTR | I | PRD | 4/5/2006 | 5/20/2013 | | | Orig PD-1; Originally part of the Oaks at Highland Lakes; listed as an amendment to Oak at HL; 52 twin single condos. |
| VILLAS AT TUSSIC | 3.85 GDU | 4.533783627 | 12.715 | 10.80775 | 49 | CLSTR | ! | PRD | 3/13/2014 | | Romanelli & Hughes Thomas W. & June Carothers | Romanelli & Hughes | 48 units plus existing house = 49 |
| VINMAR FARMS | 1.4 GDU | 1.645979493 | 87.2 | 74.12 | 122 | SFR | IV | PRD | 2/2/2002 | 3/22/2004 06/25/2007 | Romanelli & Hughes | Dominion | Orig PD-1 w/conservation |

**GENOA TOWNSHIP SUBDIVISION SUMMARY**

| SUBDIVISION | DENSITY (NDU or GDU) PER PLAN | DENSITY (NDU) UNITS/NET ACREAGE | GROSS ACREAGE | NET ACREAGE (LESS 15%) | # OF UNITS | UNIT TYPE | PLANNING AREA | ZONING DISTRICT | DATE FDP APPROVED | DATE FDP AMENDED | APPLICANT | DEVELOPER | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| VINMAR VILLAGE | 1.20 GDU; 1.43 NDU | 1.399966369 | 73.111 | 62.14435 | 87 | SFR | IV | PRD | 6/6/2013 | | Romanelli & Hughes | Romanelli & Hughes (Builder:Ryan Homes) | Off-site Open Space (13 acres) located west of S Rte 3 & north of Genoa Park; developed in conjunction with Mirasol. |
| WALNUT GROVE ESTATES | 1.15 GDU | 1.358087226 | 64.104 | 54.4884 | 74 | SFR | V | PRD | 12/14/2005 | 10/16/2006; 11/19/2007 | Romanelli & Hughes | Romanelli & Hughes | Orig PD-1; Off-site Open Space located at Westerville Reserve, Gostel Tract. |
| WESTERVILLE RESERVE | 2.18 GDU | 2.521008403 | 28 | 23.8 | 60 | SFR | I | PRD | 7/14/1997 | | Westerville Reserve LTD. | Builder:Romanelli & Hughes | Orig PD-1; GDU based on developer submission of 61 units. |
| WHITETAIL MEADOWS | 1.62 GDU | 1.901934598 | 14.227 | 12.09295 | 23 | SFR | I | SR | | | | | |
| WILLOW BEND | 1.40 GDU | 1.650010061 | 87.7 | 74.545 | 123 | SFR | I | PRD | 11/29/2000 | 1/24/2005 | | | Orig PD-1 |
| WINDALE FARMS | 0.51 GDU | 0.597420636 | 7.877 | 6.69545 | 4 | SFR | III | SR | 2/19/1990 | 6/26/2001 | | | |
| WOODHAVEN ESTATES | | | | | 34 | | III | RR | | | | | |
| | | | | | | | | | | | | | |
| WOODS ON INDIAN RUN | | | | | | | | SR | | | | | |
| WYNFIELD MEADOWS | 0.142 GCU | 0.166701859 | 21.172 | 17.9962 | 3 | SFR | III | RR | 4/23/2002 | | Deborah Carter | | |

**Genoa Township Subdivision Divergence(s) Summary**

| SUBDIVISION | DIVERGENCE(S) APPROVED | CONDITION(S) APPROVED |
|---|---|---|
| COURTYARDS ON MAXTOWN | 1) Section 903.01 to allow for property that is less than the required 25 acres to be developed;<br>2) Section 903.10 - to allow for sidewalks on only on side of the street;<br>3) Section 905.12 - to allow construction of a 9 foot hight, 32 square foot subdivision marketing sign. | |
| COURTYARDS ON TUSSIC | 1) Section 903.01 -to allow a development of 7.675 acres, less than 25 acres as required;<br>2) Section 903.02 - to allow a maximum density of 4.04 dwelling units per net developable acre;<br>3) Section 911- to allow a divergence of 3% of common open space, from 15% to 12%. | 1) Prior to Trustee hearing, Fire Dept to approve grass pavers for emergency access drive;<br>2) Developer to remove the Tussic Street Road street light;<br>3) Developer to indicate details of shielded lighting on the signage entry feature;<br>4) There will be a Delaware County Prosecutor-supported agreement regarding of-site improvements or fees in lieu of improvements pertaining to the divergence in on-sited common open space;<br>5) Prior to completion of the first unit, developer will submit to the GTWP Zoning Office a copy of the Declarations & By-Laws, to include annual census & age restriction. |
| GLADE AT HIGHLAND LAKES, THE | 1) Sec 909.01 allow for 170 setback from centerline of Big Walnut;<br>2) Sec 1804.02D allow for entrance sign to be 36 sq ft;<br>3) Sec 909.01A allow 20 foot setback on Lots 6 and 7;<br>4) Sec 918.04 allow for net density of 1.28 DU per acre. | 1) Applicant to address outstanding comments noted in the Zoning Office Staff Report. |
| HARVEST WIND | | |
| HIGHLAND LAKES EAST | | Screening between districts is required, ie., existing commercial and proposed multifamily phase. |
| HIGHLAND LAKES EAST/SECTION 7 | | 1) No Build/No Disrupt zone on north & south property lines;<br>2) Large oak trees (54" diameter & 21" circumference) will be preserved with an extended No Build zone;<br>3) Common lands will be pulled into the Highland Lakes HOA. |

**Genoa Township Subdivision Divergence(s) Summary**

| SUBDIVISION | DIVERGENCE(S) APPROVED | CONDITION(S) APPROVED |
|---|---|---|
| HIGHLAND LAKES NORTH/SECTIONS 1 & 2 | | 1) Zoning Commission has the right to review architectural control reviews prior to assignment if they are assigned to someone other than Planned Communitites;<br>2) fire/emergency access, similar to Highland Lakes, be included on the cul de sac to the north of the entrance. |
| HIGHLAND LAKES NORTH/SECTIONS 3 & 4 | | 1) accept the revised development text which defines the wooded area included in Reserve B;<br>2) an access to the Echele tract- north or west - be designed during the preliminary plat process. |
| HIGHLAND LAKES NORTH/SECTIONS 5 & 6 | | 1) Reserve A moved to the west property line;<br>2) Road "C" be converted to 2 cul de sacs;<br>3) preservation of lots on Somerset Avenue;<br>4) post/coach lamps on each lot;<br>5) reflective numbering on mailboxes;<br>6) sidewalks throughout the development |
| HIGHLAND LAKES NORTH/SECTIONS 5 PART 2 | | 1) open space to be adjusted to align with the adjacent space;<br>2) reflective numbering to be on mailboxes. |
| HIGHLAND LAKES NORTH/SECTIONS 7 | | 1) Compliance with letter from Jack Brickner dated 2/23/2000;<br>2) Compliance with the letter dated December 3, 1999, showing "Plan A" representing the 15,000 sq. ft. lot layout;<br>3) Compliance with "Plan B" showing the 10,000 sq. ft. lots as submitted on the addenda to the application. |
| HIGHLAND LAKES SOUTH | | 1) Traffic study denoting all widening be done on developer's property;<br>2) recommendations as set by Delaware County Regional Planning. |

**Genoa Township Subdivision Divergence(s) Summary**

| SUBDIVISION | DIVERGENCE(S) APPROVED | CONDITION(S) APPROVED |
|---|---|---|
| LONDON CROSSING | | BZA 2014-04; Section 806.05 Variance to allow for development of lots with front yard setbacks less than the required 50 foot minimum located on 6425 and 6445 Freeman Road (Parcels 31724301001000 & 31724301002000). Lots 1& 13 will hve a minimum front yard setback of 40 feet; frontage along Freeman Road will be screened to maintain the aesthetic appeal of Freeman Road corridor; a 50 foot No Build Zone will be designated at the rear of each lot and fences will not be allowed within the No Build Zone. |
| MANSARD ESTATES | | FDP per ZC 6/12/2006:<br>Meet all obligations in the orig Preliminary Development Plan with the following conditions:<br>1) fix tree protection fencing designation on new Tree Preservation Area Site Plan;<br>2) remove Preserve "E" from final open space calculation;<br>3) fix Tree Preservation Zoone "E" to accurately reflect the actual Tree Preservation Zone;<br>4) eliminate small pond on Lot #112 at entrance to development on Worthington Road;<br>5) submit long term Tree Preservation Plan for large 54" entrance pin oak with an alternate Landscape Plan in the event of the tree's demise;<br>6) agree to comply with GTWP Fire Dept letter dated 05/23/2006;<br>7) correct gross open space calculation;<br>8) commit to work with property owner on Lot #112 to align the new private driveway. |

**Genoa Township Subdivision Divergence(s) Summary**

| SUBDIVISION | DIVERGENCE(S) APPROVED | CONDITION(S) APPROVED |
|---|---|---|
| | | Preliminary Development Plan 5/9/2005: 1) 100% of homes require 100% natural materials on exterior; 2) Change reference in final development text from intersection o f"Braymoor Drive and Big Walnut Road" to "Grandmere Blvd. and Big Walnut Road; 3) both connections of the walking paths shown on the site plan to be connected to existing walking pather at the Grand Oak subdivision will be completed by the developer of Mansard Estates; 4 Worthington & Braymoore Road intersection improvement to utilize curb & gutter design, with both northbound and southbound left turn lanes required; 5) Final and clean copy of Development Text incorporating all commitments at this hearing shall be submitted to the Zoning Office w/in 30 days. |

**Genoa Township Subdivision Divergence(s) Summary**

| SUBDIVISION | DIVERGENCE(S) APPROVED | CONDITION(S) APPROVED |
|---|---|---|
| MEDALLION ESTATES | | 1) FDP shall conform to drawings date 4/12/1988 w/attached dev plan, landscape plan, & boundary description;<br>2) 6 conditions set by DCRPC except golf course is considered part of this dev plan an not a conditional use (SEC 405.05);<br>3)County Engineer to be asked to consider left turn storage lanes & right turn deceleration lanes at Sunbury & Big Walnut entrances if warranted by a traffic study;<br>4) where cluster homes are adjacent to 5500 Sunbury Rd, & 6017, 5565, & 5399 Tussic Road, the complete side yard from road ROW to rear lot shall be 50 feet complete w/mounding & landscaping;<br>5) at the 4 areas identified as "Attached/Detached Cluster Housing" no building shall be closer than 30 feet to the ROW of the collector streets;<br>6) No green or tee may be permitted within 200 feet of an existing home (Sec 531);<br>7) Signs: the location of the 2 golf clubs signs shall be submitted to the GTWP clerkw/in 30 days after approval of this rezoning; Sec705.01 max size permitted shall be 50 sq ft and one may be placed at each of the 3 entrances. |
| OAKS AT HIGHLAND LAKES & HOMESTEAD COMMUNITIES | | Applicant agreed<br>1) to desigate a ROW along the road connecting the condo/cluster homes & MI Homes;<br>2) to place $10,000 in an endowment for the Land Conservancy |
| PARK BEND | | 1) $5,000 donated at the beginnig of Phase 3;<br>2) Township will accept 30 acres of park space;<br>3) require easement from Parcel 3 to parkland. |

**Genoa Township Subdivision Divergence(s) Summary**

| SUBDIVISION | DIVERGENCE(S) APPROVED | CONDITION(S) APPROVED |
|---|---|---|
| SANCTUARY AT THE LAKES | 1) to allow a development of less than 25 acres; 2) to diverge from the requirement of 1.8 DU & the propose development of the net developable density of 2.4 DU per net developable acre; 3) to allow a driveway on Lot #4 to be located at the intersection; 4) to indicate benches to be located in the Orange Township portion of this proposed development, which is a divergence from the Genoa Township Zoning Resolution for Common Open Space. | 1) Add one bollard on Lot #1, on the west corner; 2) Clarify the timing of the phases, specifically for Phase 5; 3) Specify direction of home on Lots 8 & 10 as facing east, and on Lot 12 as facing west. |
| SHERBROOK (5-8) | | Street trees are the responsibility of the HOA; islands & park open space are the responsibility of the HOA; no "problem trees" to be planted as specified in transcript; acceleration/deceleration lanes, reflective numbering, post lamps, and side lot variances are kept to a minimum. |
| SLANE RIDGE | | Applicant to work with Fire Department on acceptable radius for front entrance, ensure there is suitable drainage, and to work with the present neighbors throughout the process. GTWP Trustees approved use of reduced width road. |
| SORRENTO AT HIGHLAND LAKES | | All roads within the development will remain private roads in perpetuity (specified at time of rezoning, 6/13/2007). |
| VILLAS AT TUSSIC | 1) Section 903.01 to allow for 14.72 acre property that is less than the required 25 acres to be developed; 2) Section 903.02 - to allow 3.76 units per NDU; 3) Section 903.05 to allow 100% cluster housing; 4) /sectib 904.01B to allow 100% cluster housing at higher than that allowed in 904.01B; 5) Section 909.01D to reduce the required open space no build setback of 200 feet to 145 feet along Maxtown Road; 6) to allow for sidewalks on only on side of the street. | |

**Genoa Township Subdivision Divergence(s) Summary**

| SUBDIVISION | DIVERGENCE(S) APPROVED | CONDITION(S) APPROVED |
|---|---|---|
| VILLAS AT WALNUT GROVE | 1) sidewalks to be constructed on one side of the road only; 2) a front setback of 20-feet off private streets; 3) signage at the entrance to be in excess of that permitted by the Zoning Code. | the amended text after review that includes the addtional text confirmations of commitments and changes stipulated by the Board of Trustees at the public hearing conducted on April 5, 2006, and once incorporated a clean copy will be submitted to the GTWP Zoning Office.  Changes/Additions include: 1) entire undeveloped section to be platted through DCRPC; 2) dedication of the proposed ROW along Big Walnut Rd (shown on exhibits) to be granted at time of platting and and add'l 20' temporary construction easement will be designated (on exhibits); 3) sidewalks to be 5', not 4'; 4) HOA will determine specification of the pedestiran connection between property to west (either a 5' concrete or 10' asphalt path); 5)Deed restrictions to include that streets remain private; tree preservation/mitigation plans; no units to expand the currently proposed building footpring on the west side of property to prohibit encroachment into 50' buffer; 6) correct all text & exhibits to specity 26 lights to be installed; 7) clarify only one sign to be installed on each side of road at entranceway; 8) On page 8 under Section 524.18, change reference to Item 13 to Item 16; 9) Sheet L-1 to be corrected to remove additional Tree Preservation area (not on this property); 10) Cut-off fixtures will be installed onthe proposed In-Grade lights illuminating the signs; 11) Development Text to be corrected & submitted for |

**Genoa Township Subdivision Divergence(s) Summary**

| SUBDIVISION | DIVERGENCE(S) APPROVED | CONDITION(S) APPROVED |
|---|---|---|
| VINMAR FARMS | 1) The 32 acre Fleur Road property is being accepted as off site open space, which was essential to the density calculation on the Vinmar Property. | ~~to Big Walnut Road and Old 3C Hwy;~~ to Big Walnut Road and Old 3C Hwy; 2) Vinmar to pay GTWP $100,000.00 to be used to defray parkland costs of GTWP; 3) Vinmar to obtain all necessary easements for required roadway widening on Old 3C Hwy (dated 12/14/01) at time of final platting; 4) Applicant to pay all costs associated with hook up into the county sanitary sewer for 5 abutting properties if development impacts these property's existing septic systems; |
| VINMAR VILLAGE | 1) A divergence from the current .75 units per net developable acre to 1.35 units per net developable acre; 2) entry sign is to be thirteen feet three inches (13'3") as presented in the Development Plan. | |
| WALNUT GROVE ESTATES | 1) Side setback on Lot #49 will be reduced from 50 feet to 25 feet (added in FDP Amendment). | |
| WESTERVILLE RESERVE | | 1) Left and right turn lanes be included; 2) Lot 1 become part of the retention area; 3) reflective numbering be required; 4) 20 foot limited conservation zone on Lots 59, 58, 57, 56, 55, 54, 13, 44, 45, 46, and 40 foot tree conservation on Lots 8, 7, 6, 5; 5) tree screening for Mr. Koval; 6) offsight screening be done before plat is signed. |

**Genoa Township Subdivision Amendment(s) to the Final Development Plan Summary**

| SUBDIVISION | DATE AMENDED | LIST OF AMENDMENTS |
|---|---|---|
| COURTYARDS ON TUSSIC | 7/10/2012 | Sec 909.01- to decrease the required front yard setbacks; the sides of Buildings 1, 2, 7, 11, 12, 17, ad 20 shall not be located closer than 12 feet to the private street edge of the pavement. If the developer elects to construct its largest home (designated as Promenade or PDD-3) at building locations number 10, 11, 19, 20, 21, 24, 25, 26, 27, 28, or 31, then a divergence from this section is necessary to allow the front of such building to be located no closer than 18 feet to the private street edge of the pavement. Notwithstanding the forgoing, in no event shall the front of the garage of any dwelling be closer than 20 feet to the private street edge of the pavement. Also provided on lots 22, 23, 29, and 30 only a Palazzo (PDD-1) or Portico (PDD-2) building will be allowed and no more than 3 buildings of the same type will be side by side, including he PDD-1, PDD-2 or PDD-3. |
| FERIDEAN COMMONS | 6/24/2005 | ZC 2005-06 to change prior approved 3 sty bldg to 12 new multi-unit bldgs to match existing w/conditions: 1) Bldg 3 & 3-car garage to be moved behing 75 foot setback & to be shown in revised FDP; 2) Dumpster enclosure dimensions 18'4"x24'4"; 3) Entry sign lighting to be directed onto sign w/ cut-off fixtures; 4) 10' sign setback from ROW & indicated on revised FDP; 5) Re-calc total green space w/specific breakdown of proposed pavement coverage; 6) Add'l fire hydrant to be added and shown on revised FDP; 7)Width of gate to exceed width of fire dept owned by GTWP Fire Dept; 8) Final calculations for total bldg coverage & green space on comined acreage of Feridean Community facility; 9) Final approval of GTWP Fire Dept after final engineering plans submitted; 10) Clean copy of revised FDP incorporating all conditions to be submitted w/in 30 days; 11) All Development Plan criteria not altered by this amendment remain in force. |
| | 12/13/2010 | Allow construction of an independent living, 2 unit structure. |
| GENOA FARMS | 11/14/2001 | Trustee approval of changes to FDP: 1) Sec 1B - a minimum of 25% o fthe front façade of 75% of homes & a minimum of 40% on the frront façade of 25% of homes constructed on the property shall contain natural materials consisting of stone &/or stucco stone; 2)No 2 homes adjacent or across the street from each other will be of the same architectural design; 3) The requirement of color diversity be stricken; 4) Architectural design will be provided to GTWP zoning office upon permit application. |
| | 10/28/2002 | ZC minor amendment to the subdivision landscape plan: 1) Change wood chip to a wider grass path; 2) Alter number and size of reforestation trees. |
| HARVEST WIND | 12/20/1994 | Trustee approval to rezone 1 acre from RR to PD-1; parcel noted in original development plan but never rezoned by Delaware County; inclusion of the 12' waterline easement. |
| | 9/10/2003 | Harvest Wind & Eagle Trace Parkland; determination of deed to GTWP and amenities. |

**Genoa Township Subdivision Amendment(s) to the Final Development Plan Summary**

| SUBDIVISION | DATE AMENDED | LIST OF AMENDMENTS |
|---|---|---|
| | 12/9/2002 | Change per Delaware County requirement to connect two stub streets to connect to Center Green Drive. |
| HARVEST WIND, THE VILLAGES AT | 3/3/1999 | 1) Sidewalk be added to the clubhouse area as discussed; 2)parking be addeded to the clubhouse area as discussed; 3) the small parking areas be added to the north & south sections of the development as well as small parking area in the center of the development. |
| | 4/21/1997 | 1) Alter orientation of units in the southern common wall district, being 2 units in the NW quadrant to eliminate the NW access road coming off of the NW entrance to that district as discussed; 2) to later specify signage approval; 3) in the northern common wall district, widening the 2-way portion of the road to 24;; 4) to establishing a no parking zone in the northern loop area; 5) to sidewalk on the southern edge of Centergreen Drive being the northern edge of the park area. |
| HIGHLAND LAKES NORTH/SECTION 5 PART 1 | 4/16/2012 | Change to current plan to eliminate road stub and reconfigure 3 lots as approved in former plan. |
| LAKES CONDOMINIUM, THE | 12/9/2002 | 1) The existing covered patio room additions on Units #6419 and #6476 are permitted to encroach into their minimum rear setbacks as currently existing; 2) Reduction of the minimum rear setbacks to the west boundary of the property from 25-feet to 13.5 feet; 3) No changes will be made to the minimum rear setbacks on the northern and eastern boundaries of the property. |
| MANORS AT WILLOW BEND | 10/24/2005 | ZC 2005-13 minor amendment to FDP to alter approved landscaping & adopt the tre replacement plan proposal w/ conditions: 1) 15 3" caliper trees to be planted in Reserve Area B; 2) 73 3" caliper trees to be planted on all residential lots w/in the designated tree preservation zone; 3) Tree mix will include 25 spruce trees & 26 white pine trees; 4) Plantings to be submietted to the Zoning Office on a plan clearly designated as the Tree Mitigation (Tree Replacement) Plan & will show Tree Preservation Zone for all lots; Applicant is required to meet all other obligations of the original FDP and any subsequent amendments not part of this amendment application. |
| MAPLE CREEK | 9/21/2005 | Allow the fence and recently installed temporary emergency access drive between the single family residence on Sharelane and the condominium property as is, & allowing the installation of a new GTWP Fire Department approved gate with the condition that te applicant shall return w/in the next 7 months with a new application to the ZC to address the non-compliant sidewalk & a permanent resolution of the temporar emergency access drive. |
| | 5/22/2006 | ZC reaffirmed the installatio of the gate, lock box and grass pavers to complete the emergency access as appoved in the Amendment to the FDP approvedd in ZC2005-02, /21/2005. |

**Genoa Township Subdivision Amendment(s) to the Final Development Plan Summary**

| SUBDIVISION | DATE AMENDED | LIST OF AMENDMENTS |
|---|---|---|
| | 10/25/2006 | Trustees overturned the ZC sidewalk requirement with a conditional determinatio that the investment in the sidewalk be determined and presented to the GTWP Administrator for review and the Fire Chief will meet with residents to discuss the elements surrounding the development of an emergency point of entrance at the SW corner of the development.  The proceeds when agreed upon will be placed in an interest bearing escrow account. |
| MAPLE RUN | 5/3/1993 | Front building setback lines be reduced to 40 feet. |
| | 11/8/1993 | Reduce setbacks on Lots 1702 & 1718 to 55 feet. |
| | 3/14/1994 | Reduce setbacks on Lots 1717 to 45 feet. |
| NORTHERN LAKES | 11/6/1993 | Change from multi-family to single family; removal of stub street to the north. |
| OAKMONT | 1/4/1993 | Increase subdivision by 5 lots to remain SR; current cul de sac to be removed and extended thru the Bennett parcel; setbacks reduced from 75 ft to 30 ft; rear setbacks to remain at 50 ft. |
| OAKS AT HIGHLAND LAKES & HOMESTEAD COMMUNITIES | 10/25/2000 | Trustees accepted all ZC recommendations of 10/20/2000, as well as the detail site plan for the cluster development dated 10/18/2000. In addition, the final preserve boundary line will be determined during the final |
| | 4/22/2002 | 1) Permanent signage as submitted for the Oaks at Highland Lakes for entrances at Worthington & Big Walnut Rd; |
| | 1/26/2004 | ZC2003-14 approval to relocate proposed fitness facility & pool. |
| | 5/24/2004 | ZC approval of changes to community pool dimensions. |
| | 9/26/2005 | ZC approval of changes to cluster homes section to designate the northern property line as a tree preservation area and to require a formal development plan review of Phase 3 to include 2 means of vehicular ingress/egress. |
| SHEFFIELD PARK | 1/28/2002 | Change minimum lot width from 90 feet to 85 feet; change open space references from 84.23 acres to 91.25 acres; decrease number of lots from 235 to 234; give GTWP option to receive 11.66 acres on East Side of Worthington Road; add easement between lots 128-129 to allow for walk path to tie into sidewalk. |
| | 10/26/2005 | Sec 524.17 divergence to allow public sidewalk to be replaced with asphalt bike path; at completion of Sheffield Drive and ROW dedication, the dedication of 26 additional acres of future parkland to GTWP will occur; active recreation area will be fenced on 3 sides and all playground equipment and fencing to be installed by 4/1/2006. |
| | 9/15/2011 | ZC approval to construct split rail fences in No Disturb Landscape Zone in Section 3B-3. |
| | 10/17/2011 | ZC approval to construct split rail fences in No Disturb Landscape Zone in Section 3B-3. |
| SHELLBARK RIDGE | 11/22/2004 | ZC2004-14 to amend formal lighting requirements as follows:<br>1) 6 light poles will be added to the Tussic Road entrance & will be approximately 12' in height;<br>2) Lights are to use 120 watt bulbs;<br>3) This amendment to the FDP would resolve the non-compliant light issue for the Shellbark Ridge subdivision. |

**Genoa Township Subdivision Amendment(s) to the Final Development Plan Summary**

| SUBDIVISION | DATE AMENDED | LIST OF AMENDMENTS |
|---|---|---|
| SHERBROOK | 9/29/1997 | Consolidates the park ground and adds 3 acres to the open space/park area that will belong to the homeowners; reduces the number of cluster lots. |
| | 2/6/2002 | Move tot lot to the southwest portion of the open space in Section 7. |
| SORRENTO AT HIGHLAND LAKES | 6/12/2013 | ZC 2013-01 to reduce the front setbacks on Lots 1, 3, 7, 8, 9, 10, 11, 36, 37, 38, 39, 40, 41, and 42 by 5.5 feet to a 21-foot setback. |
| VILLAS AT WALNUT GROVE | 5/20/2013 | To allow patios within the existing fifty (50) foot landscape buffer/No Build Zone not to exceed a ten (10) foot encroachment along the western boundary line of the Villas at Walnut Grove subdivision with the following conditions:<br>1) all retaining walls will not exceed three (3) feet in height;<br>2)Delaware Soil & Water Conservation District will review all plans at their discretion. |
| VINMAR FARMS | 3/22/2004 | Deletion of off-site trees; installation of 4 benches, 2 trash receptacles, and additional landscaping; deletion of mulch surrounding detention pond; additional planting of 30 six-foot trees at ground level to screen the lift station (not to be counted in the tree mitigation plan submitted at this hearing); plant 40 3"caliper trees per revised tree plan (in addition to the 62 original trees to be mitigated); entrance plan submitted at this meeting to be accepted; and any proposed changes to the lift station may be administratively approved by the GTWP Zoning Inspector. |
| | 6/25/2007 | Divergence from required Open Space (deficient .39 acres). As mitigation, within 30 days the applicant will construct an additional sidewalk on Chimera Loop (exhibit showing location to be be submitted w/in 5 days). |
| WALNUT GROVE ESTATES | 10/16/2006 | Approval of Section 2: 1) copy of Berlin easement agreement to be submitted to Zoning Office; 2) compliance w/Fire Department letter (10/13/2006); 3) submit footbridge engineering drawings for Westerville Reserve subdivision to Delaware County Engineer's Office for approval; 4) 5 foot wide asphalt walking path on Phase 2 Open Space to be built to GTWP specifications; 5) Development Text takes precedence over Development Plan in case of a discrepancy; 6) submit revised drawing for Lot #60 to show new building footprint outside the drip line of the existing 60' tree; 7) Development Text to include tree care plan for Lots 60 & 73; 8) tree impact total remains at 129 (any additional tree removal or impact to be replaced according to tree mitigation plan; 9) Development Text w/ tree protection snow fencing to be clarified to say 30' (except as delineated in Development Plan); 10) plat be removed from previously submitted package; 11) corrections in the Development Text Items 6, 7, and 8 on Page 4 of the Zoning Office review dated 10/13/2006.<br>See Divergence Tab for divergence added 10/16/2006 during FDP Amendment. |
| | 11/19/2007 | Changes to existing landscaping plan: 1) 12x12 inch limestone or permanent stone plaques/markers will replace originally proposed bollards, plantings & wood fence; 2) HOA By-Laws to be amended to provide enforcement by the HOA for any encroachment into the Common Open Space delineated in the FDP; 3) corrections to the Development Text to conform to the changes stated w/respect to bollards and By-Laws; and 4) a clean copy of the revised Site Plans & Development Text of the FDP will be submitted to the GTWP Zoning Office w/in 30 days of the amendment approval. |

**Genoa Township Subdivision Amendment(s) to the Final Development Plan Summary**

| SUBDIVISION | DATE AMENDED | LIST OF AMENDMENTS |
|---|---|---|
| WILLOW BEND | 1/24/2005 | ZC minor amendment due to original calculation of open space including 9.5 acres of drainage easements. Conditions include:<br>1) Required gravel walking path to be moved to Lots 7105, 7106, 7107, & 7108 w/o any new disturbance of existing trees;<br>2) Developer will provide add'l shrubs & hedge screening along shared Willow Bend & Highland Lakes North property line;<br>3) All existing trees, shrubs, &new hedges to be warranted by developer for 1 year;<br>4)Add'l buffering & plantings to be installed after completion o f walking path & associated grading;<br>5) Install lot bollards to be inserted at rear of Lots 7105, 7106, & 7107 to mark property/open space lines;<br>6) Zoning Officer to be notified upon completion of add'l buffer plantings & gravel walkway for compliance. |
| WINDALE FARMS | 6/26/2001 | BZA 2011-14 Variance; No attached garage required; detached garage allowed instead. |
| WOODS AT MEDALLION, THE | 9/22/2003 | 1) East turnaround to be constructed according to the drawing dated 9/8/2003, submitted by the developer;<br>2) West turnaround to be constructed according to the drawing dated 9/8/2003, submitted by the developer;<br>3) Construction of both turnarounds is to be completed by 11/15/2003 or the plan must be resubmitted to the GTWP Zoning Commission. |